# 14-2677-cv

## United States Court of Appeals

### *for the*

## Second Circuit

ANDREW ORLANDER, individually and on behalf of
all others similarly situated,

*Plaintiff-Appellant,*

– v. –

STAPLES, INC., a Delaware corporation,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

THOMPSON HINE LLP
*Attorneys for Defendant-Appellee*
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Defendant-Appellee Staples, Inc. is a publicly traded corporation, has no parent corporation, and to the best of its knowledge, no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

STATEMENT OF THE CASE.....................................................................1

APPLICABLE LEGAL STANDARD OF REVIEW................................5

SUMMARY OF THE ARGUMENT ......................................................5

ARGUMENT ...........................................................................................8

  I.   THE DISTRICT COURT CORRECTLY FOUND THAT PLAINTIFF'S CLAIM AGAINST STAPLES FOR BREACH OF CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION. ..................8

    A.   The District Court Correctly Found that Plaintiff Failed to Properly Allege That Staples Breached the Contract.........................................................8

    B.   The District Court Correctly Found that Even if There Was a Breach, Plaintiff Failed to Properly Allege that Staples's Actions Caused Any Damages.........................................................................................................14

  II.   PLAINTIFF'S CLAIMS AGAINST STAPLES FOR VIOLATIONS OF N.Y. GBL §§ 349 and 350 SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION..........................................................................19

    A.   Plaintiff Cannot Plausibly Claim To Have Been Materially Misled About Terms That Were Set Forth in the Protection Plan's Brochure.........................20

    B.   The District Court Correctly Found that Plaintiff Failed to Properly Allege Actual Injury. .................................................................................22

CONCLUSION ......................................................................................25

CERTIFICATE OF COMPLIANCE....................................................26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09 Civ. 395 (DLI) (RML), 2013 U.S. Dist. LEXIS 184232
  (E.D.N.Y. July 17, 2013) .................................................................23

*Bausch & Lomb v. Bressler*,
  977 F.2d 720 (2d Cir. 1992) ............................................................18

*Booking v. Gen. Star Mgmt. Co.*,
  254 F.3d 414 (2d. Cir. 2001) ......................................................21, 22

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007) ............................................................20

*Counsel Fin. Servs., LLC v. Melkersen Law, P.C.*,
  602 F. Supp. 2d 448 (W.D.N.Y. 2009).........................................14, 15

*Denenberg v. Rosen*,
  71 A.D.3d 187, 897 N.Y.S.2d 391 (N.Y. App. Div. 1st Dep't 2010) ...............19

*Dimond v. Darden Rests., Inc.*,
  13 Civ. 5244 (KPF), 2014 U.S. Dist. LEXIS 94004
  (S.D.N.Y. July 9, 2014) ...................................................................23

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ............................................................10

*Gomez-Jimenez v. New York Law Sch.*,
  103 A.D.3d 13, 956 N.Y.S.2d 54 (N.Y. App. Div. 1st Dep't 2012) ...........20, 21

*Jill Stuart (Asia) LLC v. Sanei Int'l Co.*,
  No. 13 Civ. 1338, 2013 U.S. Dist. LEXIS 60883 (S.D.N.Y. Apr.
  25, 2013) ......................................................................................11

*Karedes v. Ackerley Grp., Inc.*,
  423 F.3d 107 (2d Cir. 2005) ..............................................................5

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940, 944 N.Y.S.2d 452 (N.Y. 2012) .................................................19

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014) ..................................................24

*Lazaroff v. Paraco Gas Corp.*,
    28633/2009, 2011 N.Y. Misc. LEXIS 6677
    (N.Y. Sup. Ct. Kings Cnty. Feb. 25, 2011) .......................................24

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*,
    906 F.2d 884 (2d Cir. 1990) ................................................10, 11, 13

*Meyer v. JinkoSolar Holdings Co.*,
    No. 13-616-cv, 2014 U.S. App. LEXIS 14637
    (2d Cir. July 31, 2014) .......................................................5

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*,
    601807/2009, 2009 N.Y. Misc. LEXIS 6621 (N.Y. Sup. Ct. N.Y.
    Cnty. Dec. 22, 2009), *aff'd*, 87 A.D.3d 1, 925 N.Y.S.2d 61
    (N.Y. App. Div. 1st Dep't 2011) .......................................14

*Rawa v. Port Auth. of N.Y. and N.J.*,
    29751/2010, 2011 N.Y. Misc. LEXIS 5981
    (N.Y. Sup. Ct. Queens Cnty. Aug. 16, 2011) ....................................14

*Rodriguez v. Lunch*,
    No. 07 Civ. 9227 (SHS) (KNF), 2010 U.S. Dist. LEXIS 16622
    (S.D.N.Y. Feb. 23, 2010)..............................................23, 24

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ............................................18

*Sanbrook v. Office Depot, Inc.*,
    No. C-07-05938 RMW, 2008 U.S. Dist. LEXIS 40322
    (N.D. Cal. May 5, 2008) ..............................................16

*Sands v. Ticketmaster-N.Y.*,
    207 A.D.2d 687, 616 N.Y.S.2d 362
    (N.Y. App. Div. 1st Dep't 1994) ......................................21

*Smith McDonnell Stone & Co. v. Delicato Vineyards*,
    94 Civ. 6474 (JFK), 1995 U.S. Dist. LEXIS 8622
    (S.D.N.Y. June 21, 1995)..................................................................14

*Vector Capital Corp. v. Ness Techs., Inc.*,
    511 Fed. App'x 101 (2d Cir. 2013) ...............................................8

*W.W.W. Assocs. v. Giancontieri*,
    77 N.Y.2d 157, 565 N.Y.S.2d 440 (N.Y. 1990) ................................11

*Wallace v. 600 Partners Co.*,
    86 N.Y.2d 543, 634 N.Y.S.2d 669 (N.Y. 1995) ................................11

*Zuckerman v. BMG Direct Mktg.*,
    290 A.D.2d 330, 737 N.Y.S.2d 14 (N.Y. App. Div. 1st Dep't 2002) ...............21

**Statutes**

New York General Business Law §§ 349 and 350...........................................*passim*

**Rules**

Fed R. Civ. P. 12(b)(3).....................................................................3

Fed R. Civ. P. 12(b)(6)...................................................................3, 5

**Miscellaneous**

Black's Law Dictionary (9th ed. 2009) ...............................................11

iv

## STATEMENT OF THE CASE

Plaintiff has brought this putative class action based upon his unique experience in connection with his purchase of an extended service plan ("ESP") for a computer he purchased from Staples in March 2012. A-13 ¶ 19. At that time, Staples offered customers several different types of ESPs, known as Staples Protection Plans, the prices for which varied based primarily on: (1) the price of the computer; (2) the length of coverage (either two or three years); and (3) the type of coverage (either "carry-in" service or more expensive "express shipping/on-site service"). A-32. Plaintiff purchased a two-year "carry-in" Protection Plan for $99.99. A-13 ¶ 19. The Plan included six points of coverage, each listed in the Protection Plan brochure that Plaintiff received at the time of purchase. A-32. Because Plaintiff purchased "carry-in" service, rather than the more expensive "express shipping/on-site service," the Plan brochure explained that he would be "refer[red] . . . to the nearest authorized repair center for service" of covered computer problems. *Id.* Finally, the Protection Plan brochure expressly stated that "[t]he plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty." A-31.

Plaintiff's experience was atypical because he allegedly did not receive a copy of the Protection Plan's full terms and conditions, ordinarily provided to

1

customers at the time of purchase (and also readily accessible on Staples.com[1]). Plaintiff allegedly sought the terms and conditions nine months after his purchase (in December 2012), by which time Staples had launched a new ESP program (in June 2012) and had replenished its store inventories with the terms and conditions of the new ESPs, which replaced the terms and conditions of the old Protection Plans available at the time of Plaintiff's purchase. Plaintiff's alleged inability to obtain the full terms and conditions is immaterial for purposes of this appeal, because the District Court disregarded the full terms and conditions (including the binding arbitration clause set forth therein) and instead limited its contractual analysis to the terms and conditions set forth in the Protection Plan brochure that Plaintiff admittedly received.

In the Complaint, Plaintiff alleges that he brought his computer to a Staples store in November 2012, eight months after his purchase, to exchange it for a new computer after experiencing "intermittent internet connectivity issues," but was unable to do so. A-13 ¶ 22. Plaintiff alleges that Staples advised him that the computer was still covered by the manufacturer's warranty and directed him to contact the manufacturer for assistance. *Id.* Plaintiff claims that this response contradicted the terms of the Protection Plan as represented to him at the time of purchase, A-13 ¶ 24, and further claims that he would not have purchased the

---

[1] A-36-40.

Protection Plan had he known that, during the manufacturer's warranty period, he would first have to seek coverage through the manufacturer before availing himself of the additional coverage provided by Staples. A-19, 25 ¶¶ 32, 51. Plaintiff admits that he never contacted the manufacturer for assistance and that the manufacturer never denied coverage under the warranty. A-77, 115.

On February 11, 2014, Staples moved to dismiss the Complaint under Fed R. Civ. P. 12(b)(3) and 12(b)(6). A-3. Plaintiff filed his opposition on March 18, 2014, and Staples submitted its reply on April 1, 2014. *Id.* Oral argument was held on June 3, 2014. *Id.* On June 30, 2014, the District Court, Buchwald, J., entered the Order granting Staples's motion to dismiss under Fed R. Civ. P. 12(b)(6). A-100-123. The District Court concluded that "Staples did not breach the contract by requiring the plaintiff to contact the manufacture for assistance with his computer," because the language in the Protection Plan brochure "unambiguously communicates that during the life of the manufacturer's warranty, anything covered by the warranty is the responsibility of the manufacturer." A-113-114. Moreover, the District Court concluded that Plaintiff did not suffer any cognizable damages because he never contacted the manufacturer for assistance, never was denied coverage under the manufacturer's warranty, and thus never had reason to avail himself of the additional coverage provided by Staples. A-115,

120-121.  Judgment dismissing the action was entered on June 30, 2014.  A-124.
Plaintiff appealed the Order and Judgment on July 29, 2014.  A-125.

The only claims at issue on this appeal are Plaintiff's claims for breach of
contract and for violations of New York General Business Law ("N.Y. GBL") §§
349 and 350.  Plaintiff has not appealed the dismissal of his claims for breach of
express and implied warranty and unjust enrichment.

## APPLICABLE LEGAL STANDARD OF REVIEW

In reviewing a District Court's order dismissing claims pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court's scope of review is *de novo*. *Meyer v. JinkoSolar Holdings Co.*, No. 13-616-cv, 2014 U.S. App. LEXIS 14637, at *9 (2d Cir. July 31, 2014) (citing *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013)); *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005).

## SUMMARY OF THE ARGUMENT

This dispute centers around Plaintiff's failure to avail himself of the remedies that were made available to him to repair his computer, and amounts to nothing more than Plaintiff's unfounded attempt to blame Staples for adhering to the express terms of the agreement that Plaintiff entered into when he purchased a Staples Protection Plan.

As the District Court correctly found, Staples never breached the Protection Plan because under the terms of the Plan, Plaintiff was required to contact the manufacturer to have his computer repaired during the time the manufacturer's warranty covered the purchased product. A-31-32, 105, 113. During the time the manufacturer's warranty was in effect, Staples's obligation under the Protection Plan was to provide delineated services under the Plan that were not available under the manufacturer's warranty. Because Plaintiff never contacted the

5

manufacturer to have his computer repaired in the first instance, Staples's obligation to provide the additional services delineated under the Plan was never triggered. A-77, 115. Thus, Plaintiff cannot possibly allege that a breach occurred.

As the District Court correctly found, even assuming, *arguendo*, that Staples breached the agreement by requiring Plaintiff to seek assistance directly from the manufacturer, Plaintiff failed to properly allege that such a breach caused him any damages. A-115. By purchasing the Protection Plan, Plaintiff acquired the right to have his computer fixed without charge at any time during the first two years he owned it. A-114. Plaintiff was never denied this benefit. *Id.* Plaintiff could have obtained the repairs to which he was entitled by contacting the manufacturer, Hewlett Packard, an action which the District Court correctly found would have constituted at most a "minor inconvenience, not a cognizable harm" (particularly given that his Protection Plan provided for referral to an outside repair center, not on-site service at Staples). A-115. Plaintiff, however, does not allege that he contacted Hewlett Packard and/or that it refused to repair his computer. Nor does he allege that Staples subsequently refused to repair his computer (even after the manufacturer's warranty expired). Plaintiff simply failed to avail himself of the remedies available to him.

Plaintiff's claims under N.Y. General Business Law §§ 349 and 350 fail for similar reasons. First, Plaintiff cannot plausibly claim to have been materially misled about Plan terms that were expressly set forth in the brochure he received. And even assuming, *arguendo*, that Plaintiff was misled, the District Court was correct in concluding that Plaintiff failed to show that he suffered any actual injury. As the District Court correctly explained, "regardless of whether it was Staples or the manufacturer that was responsible for servicing his computer, Plaintiff received the benefit of the bargain: the ability to have his computer repaired or replaced if a problem arose during the first two years of ownership." A-120. Plaintiff has not alleged that he contacted Hewlett Packard to service his computer, that Hewlett Packard refused to do so, and/or that Staples then refused to repair his computer. The mere fact that Plaintiff claims he would not have purchased the Protection Plan absent Staples's allegedly deceptive practices is insufficient to allege injury.

**ARGUMENT**

**I.    THE DISTRICT COURT CORRECTLY FOUND THAT PLAINTIFF'S CLAIM AGAINST STAPLES FOR BREACH OF CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION.**

The District Court correctly found that Plaintiff's claim against Staples for breach of contract should be dismissed for failure to state a cause of action.  In order to state a cause of action for breach of contract, a plaintiff must plead:  "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Vector Capital Corp. v. Ness Techs., Inc.*, 511 Fed. App'x 101, 104 (2d Cir. 2013) (internal quotation and citation omitted).  As the District Court correctly found, Plaintiff did not adequately allege either the second element (breach) or the third element (damages).

**A.    The District Court Correctly Found that Plaintiff Failed to Properly Allege That Staples Breached the Contract.**

The District Court correctly found that "Staples did not breach the contract by requiring plaintiff to contact the manufacturer for assistance with his computer" because the language in the Protection Plan brochure, which Plaintiff received at the time of purchase, "unambiguously communicates that during the life of the manufacturer's warranty, anything covered by the warranty is the responsibility of the manufacturer."  A-113-114.  As explained below, Plaintiff's attempt to avoid the plain meaning of the Plan's language is unavailing.

8

The purported "breach" that Plaintiff alleges he suffered is that he wanted to exchange his computer for a new computer "after experiencing intermittent connectivity issues," but was unable to do so. A-13 ¶ 22. Plaintiff, however, does not point to the existence of any terms of the Protection Plan that would have permitted him to make such an exchange. A-15-16, ¶ 27. Indeed, Plaintiff purchased a "carry-in" service plan, which, as set forth in the Plan brochure, entitled him to be "refer[red] . . . to the nearest authorized repair center for service." A-31-32. He does not contend, nor can he, that he purchased a plan that permitted him to walk into a Staples store and exchange his computer on the spot. Plaintiff conceded this point no less than six times during oral argument before the District Court. A-67, 68, 72, 73, 83-84.

Moreover, Plaintiff concedes that the manufacturer's warranty remained in effect at the time of the attempted exchange. A-15-16, ¶ 27. As the District Court correctly found, the Protection Plan brochure "unambiguously communicates that during the life of the manufacturer's warranty, anything covered by the warranty is the responsibility of the manufacturer." A-113. Thus, under the clear terms of the Protection Plan, Plaintiff was first required to contact the manufacturer, Hewlett Packard, to have his computer repaired.[2] Staples's obligation to provide the

_____

[2] Plaintiff's copy of the Protection Plan brochure contains a handwritten 800 number, which Plaintiff's counsel acknowledges was given to Plaintiff by Staples at the time he enrolled in the plan. A-32, 76, 79. That 800 number, which the

9

services delineated under the Protection Plan was only triggered in the event that the manufacturer's warranty did not cover the repairs sought by Plaintiff, but the Protection Plan did. Because Plaintiff failed to avail himself of the manufacturer in the first instance (A-77, 115), as he was required to do under the Protection Plan, Staples's obligation to provide services was never triggered and thus no breach occurred.

Contrary to Plaintiff's contention, the District Court correctly determined that the Protection Plan's language was unambiguous. (*See* Appellant's Br. 14-18). The Protection Plan brochure, which Plaintiff received at the time of purchase, expressly stated that "[t]he plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty." A-31-32. A writing is ambiguous if its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 173 (2d Cir. 2004) (internal quotations and citation omitted). By contrast, "[l]anguage whose meaning is otherwise plain is not ambiguous merely

_____

District Court called during oral argument, is a number for Hewlett Packard's consumer support line. A-76.

because the parties urge different interpretations in the litigation." *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). Moreover, "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (N.Y. 1990). *See also Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 671 (N.Y. 1995) ("The rules governing the construction of ambiguous contracts are not triggered unless the court first finds an ambiguity."). Finally, the "Court may look to extrinsic evidence outside the four corners of the agreement only where the term at issue is ambiguous on its face." *Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, No. 13 Civ. 1338, 2013 U.S. Dist. LEXIS 60883, at *9 (S.D.N.Y. Apr. 25, 2013).

The District Court correctly found that the language of the Protection Plan brochure "unambiguously communicates that during the life of the manufacturer's warranty, anything covered by the warranty is the responsibility of the manufacturer."[3] A-113. It would be unreasonable to interpret the language in any other manner, because then the Plan would effectively replace and be exclusive of the manufacturer's warranty, whereas the Plan brochure expressly states that "[t]he

---

[3] Even Black's Law Dictionary defines an extended service contract as "[a]n additional warranty often sold with the purchase of consumer goods . . . to cover repair costs not otherwise covered by a manufacturer's standard warranty, by *extending either the standard-warranty coverage period or the range of defects covered*." *Black's Law Dictionary* 1725 (9th ed. 2009) (emphasis added).

plan term is *inclusive* of manufacturer's warranty … and *does not replace* the manufacturer's warranty." A-31-32 (emphases added). Accordingly, the District Court correctly found that, as a matter of law, it could not consider extrinsic evidence (including statements allegedly made by the sales representative) when construing the contract. A-113-114.

Plaintiff, in a futile attempt to avoid the plain meaning of the Plan's language, blatantly mischaracterizes the District Court's interpretation of the brochure, claiming that "the District Court concluded that the language unambiguously conveyed that the Protection Plan provided no services during the manufacturer's warranty." (*See* Appellant's Br. 17). But that is not what the District Court concluded, nor is Staples even arguing for such an interpretation. Rather, the District Court interpreted the Plan brochure to mean "that during the life of the manufacturer's warranty, anything covered by the warranty is the responsibility of the manufacturer," A-113, but acknowledged that there could have been scenarios, during or after the manufacturer's warranty period, in which Plaintiff's computer "required services covered under the Protection Plan but not under the manufacturer's warranty." A-121. Plaintiff's ambiguity argument is thus a red herring.

Further, contrary to Plaintiff's claim, no ambiguity was introduced by the Plan brochure's additional statement that "[s]ome restrictions apply. For complete

12

details, including Obligor information, see Terms and Conditions."  A-15-16 ¶ 27.

There can simply be no question that the term "some restrictions may apply" is

clear on its face; "restrictions" cannot reasonably be construed as *expanding* the

Protection Plan to include additional services or entitlements not identified in the

Plan brochure.   The mere fact that Plaintiff did not determine what those

restrictions were (despite their availability on the Staples.com website at the time

of his purchase) (A-36-40) does not make the meaning of that statement any less

clear.  *See Metropolitan Life Ins. Co.*, 906 F.2d at 889.

    Nor is there any merit to Plaintiff's claim that the Court considered the terms

and conditions that were applicable to a later Protection Plan in determining that

the Protection Plan's language was unambiguous.  (*See* Appellant's Br. 15-16).

The District Court explicitly stated that it was "limit[ing] [its] analysis of the

contract to the [Protection Plan] brochure."  A-111.  The District Court only set

forth language from the later terms and conditions for purposes of explaining the

background of the case.  A-104-105.  And the language that the District Court

referenced was indeed language from the terms and conditions that were applicable

at the time that Plaintiff purchased the Protection Plan.  A-37.

**B.      The District Court Correctly Found that Even if There Was a Breach, Plaintiff Failed to Properly Allege that Staples's Actions Caused Any Damages.**

The District Court correctly found that even if Staples had breached the Protection Plan, Plaintiff's claim for breach of contract must fail because he did not adequately allege that Staples's actions caused him any cognizable damages.[4] A-115.  It is black letter law that allegations of facts showing damages are required to state a claim for breach of contract.  *See Smith McDonnell Stone & Co. v. Delicato Vineyards*, 94 Civ. 6474 (JFK), 1995 U.S. Dist. LEXIS 8622, at *11 (S.D.N.Y. June 21, 1995) ("Allegations of a breach of contract are insufficient in the absence of allegations of facts showing damages."); *Counsel Fin. Servs., LLC*

_____

[4] Regarding the District Court's finding that Plaintiff's claim for breach of contract fails because the breach was not material, at least some New York courts have indicated that a breach of contract claim requires stating that a material breach occurred.  *See, e.g.*, *Rawa v. Port Auth. of N.Y. and N.J.*, 29751/2010, 2011 N.Y. Misc. LEXIS 5981, at *11-12 (N.Y. Sup. Ct. Queens Cnty. Aug. 16, 2011) ("[i]n order to prevail on a breach of contract claim, a plaintiff must establish each of the following four elements:  (1) the existence of a valid contract; (2) plaintiffs [sic] performance of the contract; (3) defendant's material breach of the contract; (4) damages."); *One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 601807/2009, 2009 N.Y. Misc. LEXIS 6621, at *4-5 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 22, 2009), *aff'd*, 87 A.D.3d 1, 925 N.Y.S.2d 61 (N.Y. App. Div. 1st Dep't 2011) ("[t]he moving party is required to plead the following elements in a cause of action for breach of contract:  the existence of a binding contract; plaintiffs [sic] performance of the contract; defendant's material breach of the contract; and damages.").  Even if the District Court, however, incorrectly determined that a material breach is required to state a claim for a breach of contract, such a determination is inconsequential because the District Court correctly concluded that Plaintiff failed to state a claim for breach of contract based on the lack of any breach and the lack of any cognizable damages.

*v. Melkersen Law, P.C.*, 602 F. Supp. 2d 448, 452 (W.D.N.Y. 2009) ("In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint.") (internal quotations and citations omitted).

The District Court correctly found that by purchasing the Protection Plan, Plaintiff "acquired the right to have his computer fixed without charge at any time during the first two years he owned it." A-114. Plaintiff was never denied this benefit. *Id.* Indeed, Plaintiff likely could have obtained the repairs to which he was entitled by contacting Hewlett Packard at the 800 number that Plaintiff admits was given to him at the time of Plan enrollment (A-32, 76, 79), an action which the District Court correctly found would have constituted at most "a minor inconvenience, not a cognizable harm" (particularly given that his Protection Plan provided for referral to an offsite repair center, not express shipping or on-site service at Staples).[5] *Id.* Moreover, the District Court correctly found that "[i]n order to claim damages, plaintiff would have to allege that after he contacted Hewlett Packard, it failed to fix his computer or failed to do so free of charge, and Staples then refused to either fix the computer itself or reimburse him." *Id.*

---

[5] Contrary to Plaintiff's contention, the District Court did not assume that the authorized repair centers referenced in the Protection Plan brochure included a Hewlett Packard repair center – only that being referred to an HP repair center, instead of another repair center, and then doing nothing to avail himself of the available services, was not a cognizable harm.

Plaintiff, however, does not allege that: (1) he contacted Hewlett Packard; (2) Hewlett Packard refused to repair his computer; and/or (3) Staples then refused to repair his computer.

The allegations that the District Court explained would have been required to demonstrate damages (but were not alleged here) are exactly the allegations that were made by the plaintiff in *Sanbrook v. Office Depot, Inc.*, No. C-07-05938 RMW, 2008 U.S. Dist. LEXIS 40322, at *2 (N.D. Cal. May 5, 2008), a case upon which Plaintiff relies for his breach of contract claim. In *Sanbrook*, the plaintiff sought to have defendant, Office Depot, repair his computer under a protection plan he had purchased, which advertised "on-site service for your computer system" and "100% of parts and labor coverage from day one." *Id.* at *3. The defendant, however, refused to repair it, claiming that it was still under the manufacturer's warranty. *Id.* The plaintiff then sought to have the problem fixed by the manufacturer, only to be told that the problem was not covered by the manufacturer's warranty. *Id.* Upon requesting on-site repair of his computer by the defendant, plaintiff was told that the defendant did not offer on-site repair, and ultimately had to hire a third party to repair his computer, at plaintiff's own expense. *Id.* In contrast to *Sanbrook*, here Plaintiff has not alleged that he contacted the manufacturer, that the manufacturer refused to repair his computer, and/or that Staples then refused to repair it. In short, Plaintiff has not alleged that

16

he was denied the right to have his computer repaired without charge during the first two years of his purchase.

Plaintiff claims that the District Court's reasoning "obviates Staples of any obligation it may have had during the first year" of the Plan and therefore "he has suffered damages in the amount it cost him for one year of the Protection Plan" (Appellant's Br. 23-24) (although Plaintiff did not pay separately for the first year) (A-14 ¶ 25). But that is wrong on both fronts. The District Court made clear that "[h]ad [Plaintiff] alleged that he contacted Hewlett Packard and was denied the services for which he had paid (i.e., if Hewlett Packard refused to fix his computer for free at the nearest authorized repair center), and Staples then refused to provide those services, he could claim injury." A-120-121. The fact that Plaintiff did not need to avail himself of the Plan's additional coverage during the first year does not mean that Staples had no obligations during that year, nor does it plausibly support the inference that the Plan had no value or that Plaintiff was damaged by paying for added security.[6]

Finally, Plaintiff claims that he "would not have purchased" the Protection Plan had he known it was subject to the manufacturer's warranty. A-19 ¶ 32. That claim is belied, however, by the fact that, at the time of purchase, Plaintiff received

---

[6] Plaintiff has not alleged that manufacturers never deny coverage during the first year for services provided under the Protection Plan (including, for example, power surge coverage of up to $1,000).

17

a Plan brochure expressly stating that "[t]he plan term is inclusive of manufacturer's warranty … and does not replace the manufacturer's warranty" (A-15-16, ¶ 27), and yet he proceeded with the purchase anyway.  Indeed, Plaintiff took no action even after being given, at the time of Plan enrollment, the 800 number for HP's consumer support line.  A-32, 76, 79.  In light of these admitted facts, Plaintiff's self-serving speculation about what he allegedly would have done is not plausible and need not be credited.  *See, e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In order to state a claim on which relief can be granted, the '[f]actual allegations' of a complaint 'must be enough to raise a right to relief above the speculative level' and make the claim at least 'plausible on its face,'" and courts "are not required to credit conclusory allegations") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the mere allegation that Plaintiff would not have purchased the product is insufficient to establish actual damage since such an allegation is not plausibly connected to the Protection Plan or any alleged breach thereof.  *See Bausch & Lomb v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992) ("[a] plaintiff seeking damages for breach of contract . . . must demonstrate that the damages were caused by and are directly traceable to the . . . breach") (internal quotations and citations omitted).  As the District Court correctly found, Plaintiff was never deprived of the benefit of his bargain and never availed himself of the remedies

18

available to him to repair his computer, so he has no basis for alleging actual damages.

## II.  PLAINTIFF'S CLAIMS AGAINST STAPLES FOR VIOLATIONS OF N.Y. GBL §§ 349 and 350 SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION.

The District Court also correctly found that Plaintiff failed to state a claim against Staples for violations of New York General Business Law §§ 349 and 350. (A-120).  In order to state a cause of action under N.Y. GBL §§ 349 and 350, a plaintiff must allege that a defendant was engaged in:  "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 452 (N.Y. 2012) (internal quotations and citation omitted); *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391, 395 (N.Y. App. Div. 1st Dep't 2010).  The only difference between the two sections is that "§ 349 declares deceptive acts and practices unlawful and § 350 declares false advertising unlawful."  *Denenberg*, 71 A.D.3d at 194, 897 N.Y.S.2d at 395.  As explained below, Plaintiff cannot plausibly claim to have been materially misled about Plan terms that were expressly set forth in the Plan brochure.  And even assuming, *arguendo*, that Plaintiff was misled, the District Court was correct in concluding that Plaintiff failed to show that he suffered any actual injury.

19

**A.     Plaintiff Cannot Plausibly Claim To Have Been Materially Misled About Terms That Were Set Forth in the Protection Plan's Brochure.**

Plaintiff cannot plausibly claim to have been materially misled about the Protection Plan's terms when the relevant terms were expressly set forth in the Plan brochure that he received at the time of purchase.  "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 532-33 (N.Y. 1995)).

Plaintiff claims that he was materially misled about the fact that the Protection Plan was subject to the manufacturer's warranty.  But the Plan brochure, which Plaintiff received at the time of purchase, expressly stated that "[t]he plan term is inclusive of the manufacturer's warranty … and does not replace the manufacturer's warranty."  A-31.  Moreover, Plaintiff concedes that the 800 number for the manufacturer's customer support line was given to him at the time of Plan enrollment.  A-32, 76, 79.

As a matter of law, information that is expressly disclosed to the consumer at the time of purchase cannot be considered misleading to a reasonable consumer acting reasonably under the circumstances.  *See, e.g.*, *Gomez-Jimenez v. New York*

20

*Law Sch.*, 103 A.D.3d 13, 17, 956 N.Y.S.2d 54, 58-59 (N.Y. App. Div. 1st Dep't 2012) (holding that defendant's reporting of its salary data was not misleading because defendant disclosed that the representations were based on small samples of self-reporting graduates); *Zuckerman v. BMG Direct Mktg.*, 290 A.D.2d 330, 330-31, 737 N.Y.S.2d 14, 15-16 (N.Y. App. Div. 1st Dep't 2002) (affirming dismissal of plaintiff's section 349 claim that defendant billed its customers for shipping and handling in false and inflated amounts that exceeded its actual costs, holding that such claims were insufficient as a matter of law under section 349 in light of defendant's promotional materials setting forth the exact amount to be charged for the shipping and handling of the items at issue); *Sands v. Ticketmaster-N.Y.*, 207 A.D.2d 687, 687, 616 N.Y.S.2d 362, 363 (N.Y. App. Div. 1st Dep't 1994) (holding that defendant's charging of allegedly excessive fees in connection with the sale of tickets did not violate the prohibition against deceptive business practices under section 349, since the record showed that the challenged business practices were fully disclosed prior to the sale of tickets).[7]

Although the District Court did not rest its decision on this ground (instead "assuming that plaintiff was reasonably misled" and nevertheless dismissing his claims for lack of injury, as discussed below), this Court has "discretion to

---

[7] While the above-mentioned cases deal with claims brought under N.Y. GBL § 349, the policy considerations animating sections 349 and 350 are essentially the same, namely protecting consumers against misleading and deceptive practices.

consider issues that were raised, briefed, and argued in the District Court," which this one was. *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418-19 (2d. Cir. 2001). Accordingly, dismissal of Plaintiff's claims under N.Y. GBL §§ 349 and 350 can and should be affirmed on the additional ground that Plaintiff cannot plausibly claim that a reasonable consumer acting reasonably under the circumstances would be materially misled about Plan terms that were expressly set forth in the Plan brochure.

**B.     The District Court Correctly Found that Plaintiff Failed to Properly Allege Actual Injury.**

The District Court correctly found that "even assuming that plaintiff was reasonably misled into believing that Staples was responsible for services covered under the manufacturer's warranty, he has failed to show how this caused him injury." A-120. In particular, the District Court correctly found that "plaintiff received the benefit of the bargain: the ability to have his computer repaired or replaced if a problem arose during the first two years of ownership." *Id.* As the District Court explained, "[t]he only difference was that when [Plaintiff's] computer experienced a problem during the first year, he had to contact Hewlett Packard to obtain . . . the services to which he was entitled." *Id.* The District Court correctly found that "[h]ad [Plaintiff] alleged that he contacted Hewlett Packard and was denied the services for which he had paid (i.e., if Hewlett Packard refused to fix his computer for free at the nearest authorized repair center), and

22

Staples then refused to provide those services, he could claim injury." A-120-121. Plaintiff, however, failed to make any such allegations. A-121. In other words, Plaintiff was never denied the ability to have his computer serviced; he simply failed to avail himself of the remedy that was available to him.

Plaintiff claims, again, that he would not have purchased the Protection Plan absent Staples's allegedly deceptive practices. A-25 ¶ 51. As explained above, however, that allegation is conclusory and speculative and therefore need not be credited. *See* Argument § I, *supra*. Moreover, even if credited, such an allegation is insufficient as a matter of law to establish actual injury under GBL §§ 349 and 350. *See Ackerman v. Coca-Cola Co.*, No. 09 Civ. 395 (DLI) (RML), 2013 U.S. Dist. LEXIS 184232, at *54-55 n.22 (E.D.N.Y. July 17, 2013) ("[T]he New York Court of Appeals has rejected as 'legally flawed' the argument that 'consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349.'") (internal citation omitted); *see also Dimond v. Darden Rests., Inc.*, 13 Civ. 5244 (KPF), 2014 U.S. Dist. LEXIS 94004, at *30 (S.D.N.Y. July 9, 2014) ("Just because plaintiff purchased goods that he might not have otherwise purchased does not constitute actual harm, since such a theory improperly 'sets forth deception as both act and injury'") (internal citations omitted); *Rodriguez v.*

23

*Lunch*, No. 07 Civ. 9227 (SHS) (KNF), 2010 U.S. Dist. LEXIS 16622, at *31 (S.D.N.Y. Feb. 23, 2010).

Moreover, the cases on which Plaintiff relies to establish actual injury are clearly inapplicable to the instant case. Unlike the facts alleged here, injury in those cases cited by Plaintiff had been adequately pled because plaintiffs had alleged that they had paid a price premium. For example, in *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014), the court found that plaintiffs had adequately pled injury where plaintiffs alleged that they had paid a price premium for milk based on alleged misrepresentations. *Id.* at 288-89 ("'[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NY GBL 349,' but allegations that the plaintiff paid a price premium based upon deceptive practices are sufficient to state an injury.") (quoting *Rodriguez*, 2010 U.S. Dist. LEXIS 16622, at *9). Similarly, in *Lazaroff v. Paraco Gas Corp.*, 28633/2009, 2011 N.Y. Misc. LEXIS 6677, at *15 (N.Y. Sup. Ct. Kings Cnty. Feb. 25, 2011), the court found that plaintiff adequately pled injury where he alleged not only that he would not have purchased the product at issue, a propane cylinder, but also that plaintiff paid a price premium for the cylinder. In contrast, Plaintiff did not allege that he paid a price premium for the Protection

24

Plan.  Indeed, nothing in the Complaint suggests that the Plan's price was any higher than the prices of comparable ESPs offered by other retailers.

## **CONCLUSION**

For the reasons set forth above, Defendant-Appellee respectfully submits that this Court affirm the judgment of the District Court below in all respects.

Dated: October 22, 2014

<div style="margin-left:40%">

Respectfully submitted,

**THOMPSON HINE LLP**

By:      /s/Barry M. Kazan
       Barry M. Kazan
       335 Madison Avenue – 12th Fl.
       New York, New York 10017
       Telephone:  (212) 344-5680

*Attorneys for Defendant-*
*Appellee Staples, Inc.*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) in that it does not exceed 30 pages.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it is proportionately spaced typeface Times New Roman using 14-point type by the Microsoft Word program.

Dated: October 22, 2014

<div align="right">

 /s/ Barry M. Kazan
_____
Barry M. Kazan

*Attorneys for*
*Defendant-Appellee Staples, Inc.*

</div>